IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

PORTERS BUILDING CENTERS, INC., )
                                    )
           Plaintiff,         )
                                    )
vs.                                )        Case No. 16-06055-CV-SJ-ODS
                                    )
SPRINT LUMBER, et al.,        )
                                    )
           Defendants.     )

## ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending are Plaintiff's Motion for Summary Judgment (Doc. #263), and Defendants' Motion for Summary Judgment (Doc. #265). For the following reasons, both motions are granted in part and denied in part.

## I.      BACKGROUND[1]

Plaintiff is a family owned business providing building supplies and lumber to commercial contractors and homebuilders. Its stores are located in Kearney, Cameron, and Laurie, Missouri; and Elwood, Kansas. In 2003, Defendants Jerry Downey and Ray Meng began working for Plaintiff. Defendants Jess Reynolds and Sheila Higdon began working for Plaintiff in 2007 and 2010, respectively. These individuals worked at Plaintiff's Elwood store, and were at-will employees.

In late April 2016, Downey, Higdon, Reynolds, and Meng ("former employees") resigned from their employment with Porters. On May 2, 2016, they began working for Defendant Sprint Lumber, Inc. Sprint Lumber sells lumber and building materials to commercial builders from its locations in St. Joseph and Platte City, Missouri. Defendant Scott Laderoute is president and owner of Sprint Lumber.

Beginning in December 2015, there were several communications between Downey and Laderoute about Downey leaving Plaintiff to work for Sprint Lumber. Later

---

[1] Unless otherwise noted, the facts in this Order are undisputed by the parties.

on, those discussions included Reynolds, Higdon, and others employed by Plaintiff. Prior to resigning from Plaintiff, the former employees communicated with several customers they serviced at Plaintiff regarding their impending move to Sprint Lumber. They also provided Sprint Lumber credit applications to many of those customers.

In May 2016, Plaintiff filed this lawsuit and sought a temporary restraining order, which was denied. Docs. #1-2, 8. In October 2016, Plaintiff filed a motion for preliminary injunction. Doc. #116. After a hearing, the Court denied Plaintiff's motion for preliminary injunction. Doc. #194.

During the pendency of this lawsuit, Plaintiff amended its complaint twice. In its Second Amended Complaint, Plaintiff alleges the following claims: (1) violation of the Computer Fraud and Abuse Act, (2) violation of the Sherman Antitrust Act,[2] (3) computer tampering, (4) violation of the Missouri Uniform Trade Secrets Act, (5) breach of duty of loyalty, (6) tortious interference with business expectancy, (7) trespass, and (8) civil conspiracy. Doc. #109. Downey asserts four counterclaims: (1) violation of 18 U.S.C. § 2701, (2) violation of 18 U.S.C. § 2511, (3) invasion of privacy, and (4) trespass to chattels. Doc. #122. Plaintiff now moves for summary judgment on the counterclaims alleged by Downey, and Defendants move for summary judgment on all of Plaintiff's remaining claims.

## II.    STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that

_____

[2] Plaintiff's motion voluntarily dismiss this claim was granted. Docs. #299, 314.

party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION
### A. Defendants' Motion for Summary Judgment
### (1) Computer Fraud and Abuse Act (Count I)

For its Computer Fraud and Abuse Act ("CFAA") claims, Plaintiff alleges Downey, without authorization, deleted emails from his work email account, which contained confidential information, trade secrets, and customer contact information. Doc. #109, at 15-16. Plaintiff alleges Higdon, without authorization, deleted confidential information, trade secrets, and customer contact information on the cell phone provided to her by Plaintiff. *Id.* Plaintiff contends Sprint Lumber and Laderoute "affirmatively participated in and conspired" with Downey and Higdon. *Id.* Defendants argue they are entitled to summary judgment because Downey and Higdon did not act without authorization and/or did not act in excess of their authorization, and Plaintiff has not established loss.

The CFAA allows a private party to bring a civil action for damages caused by computer fraud. 18 U.S.C. § 1030(g). To assert a civil action under the CFAA, a plaintiff must establish the defendant (1) accessed a protected computer, (2) without authorization or exceeding authorized access, and (3) caused loss in excess of $5,000. 18 U.S.C. §§ 1030(a)(4), 1030(c)(4)(A)(i)(I). The parties' discussions address only the second and third elements, conceding Plaintiff met the first element.

The CFAA does not define the term "without authorization" or "authorization," but defines "exceeds authorized access" as "access to a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6). The parties concede courts are split in interpreting both phrases, particularly when applying the CFAA to an employee who accesses an employer's computer with permission prior to termination, and uses that

3

information to benefit a competitor.  Doc. #265, at 65-69; Doc. #291, at 103-08; *see also InfoDeli, LLC v. W. Robidoux, Inc.*, No. 15-364-BCW, 2016 WL 6921623, at *6 (W.D. Mo. Mar. 7, 2016) (noting courts are split on the CFAA definitions but declining to adopt a definition when considering a motion to dismiss).

Some courts hold an individual acts without authorization whenever he, without his employer's knowledge, "acquires adverse interest or if he is otherwise guilty of a serious breach of loyalty."  *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 421 (7th Cir. 2006) (citation omitted); *see also United States v. Rodriguez*, 628 F.3d 1258, 1263-64 (11th Cir. 2010); *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore LLC*, 428 F.3d 504, 510-11 (3d Cir. 2005); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000).  Other courts apply a more narrow view, finding "without authorization" applies to outsiders' or hackers' conduct, and does not apply to individuals, such as employees, who have permission to access the computer.  *See WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 203-07 (4th Cir. 2012); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132-35 (9th Cir. 2009); *US Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1192-95 (D. Kan. 2009); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964-65 (D. Ariz. 2008).

The Eighth Circuit has not decided whether the CFAA imposes civil liability on employees who access information with permission but with improper purpose.  Several district courts in the Eighth Circuit have decided this particular issue.  The Eastern District of Missouri, Southern District of Iowa, District of Nebraska, and Western District of Arkansas adopted the broader interpretation to cover actions by an employee who, although given access to an employer's computers, utilizes information from the computers for personal use, in contravention of the employee's duty of loyalty, or to aid unlawful competition.  *Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg., & Consulting, LLC*, No. 08CV1683, 2009 WL 3523986, at *4 (E.D. Mo. Oct. 26, 2009) (stating a CFAA claim was sufficiently pled when the former employees were alleged to have "acted without authorization" by obtaining the plaintiff's information for "personal use and in contravention of their fiduciary duty"); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1060-61 (S.D. Iowa 2009) (finding the defendant's "actions in accessing NCMIC's computer system to send e-mails aiding his unlawful competition… and to obtain

NCMIC's customer spreadsheet" was "without authorization"); *Ervin & Smith Advert. & Pub. Relations, Inc. v. Ervin*, No. 8:08CV459, 2009 WL 249998, at *7-8 (D. Neb. Feb. 3, 2009) (finding the defendants' authorization terminated once they destroyed the agency relationship by appropriating protected information); *Nilfis-Advance, Inc. v. Mitchell*, No. 05-5179, 2006 WL 827073, at *2 (W.D. Ark. Mar. 28, 2006) (finding the plaintiff sufficiently pled a CFAA violation by alleging the defendant emailed company files to a personal computer for the purpose of misappropriation).[3]

This Court is persuaded by the Seventh Circuit's reasoning in *Citrin*, and the decisions issued by the majority of district courts in the Eighth Circuit. In *Citrin*, Judge Posner found an employee's authorization to access a computer "terminated when…he resolved to destroy files that incriminated himself and other files that were the property of his employer, in violation of the duty of loyalty that agency law imposes on an employee." 440 F.3d at 420 (citations omitted). Although noting the difference between "without authorization" and "exceeding authorized access" is "paper thin," Judge Posner concluded the employee's breach of duty of loyalty terminated his agency relationship, and thus, his computer access was terminated. *Id.* at 420-21. "Violating the duty of loyalty, or failing to disclose adverse interests, voids the agency relationship." *Id.* at 421 (quoting *State v. DiGiulio*, 835 P.2d 488, 492 (Ariz. Ct. App. 1992)); *see also* Restatement (Second) of Agency § 112 cmt. b (1958) (stating an agent who acquired an interest adverse to the principal or acts for another principal "should realize that the principal would not desire him to continue to act"). Applying this standard, the Court finds Plaintiff may bring CFAA claims against Downey and Higdon. The Court finds genuine issues of material fact exist with regard to these claims, and thus, Defendants' summary judgment motion on the CFAA claims against Higdon and Downey is denied.

With regard to Meng and Reynolds, Plaintiff admitted Meng and Reynolds did not tamper with its computers. Doc. #265, at 19; Doc. #286-1, at 5; Doc. #291, at 28. Thus, Defendants' motion for summary judgment on Plaintiff's CFAA claims against Meng and Reynolds is granted.

---

[3] The District of Minnesota and Northern District of Iowa adopted the more narrow reading of authorization. *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 917 (D. Minn. 2012); *Am. Fam. Mut. Ins. Co. v. Hollander*, No. C08-1039, 2009 WL 535990, at *11 (N.D. Iowa Mar. 3, 2009).

The Court is left with Plaintiff's CFAA claims against Sprint Lumber and Laderoute. Plaintiff alleges Sprint Lumber and Laderoute affirmatively participated in and conspired with Downey and Higdon to violate the CFAA. The parties failed to address this particular claim. Although it is doubtful the CFAA permits a civil conspiracy claim, the Court must deny Defendants' motion for summary judgment on Plaintiff's CFAA claim against Sprint Lumber and Laderoute.

## (2) Missouri Computer Tampering Act (Count III)

Defendants seek summary judgment on Plaintiff's Missouri Computer Tampering Act ("MCTA") claims, and Plaintiff's claim for punitive damages under the MCTA.

## (a) Substantive Claims under the MCTA

Plaintiff alleges Downey and Higdon violated the MCTA by (1) affirmatively and without authorization, deleting, altering, and/or destroying company data and confidential information on Plaintiff's computing and mobile devices, and (2) disclosing and taking company data and confidential information from the computing and mobile devices. Doc. #109, at 18-19. Plaintiff also contends Sprint Lumber and Laderoute conspired with Downey and Higdon to perform these acts, and Sprint Lumber and Laderoute received, retained, and/or used the data and confidential information obtained by Downey and Higdon. *Id.* Defendants argue entitlement to summary judgment because Downey and Higdon were authorized to access, delete, and/or alter information on Plaintiff's computers and cell phones.

The owner of a computer system may bring a civil action against any person who violates the MCTA. Mo. Rev. Stat. § 537.525.1 (2016). A person violates the MCTA by "knowingly and without authorization or without reasonable grounds to believe he has such authorization" does one of the following:

> (1) Modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network: or (2) Modifies or destroys data or programs or supporting documentation residing or existing external to a computer, computer system, or computer network; or (3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network; (4) Discloses or takes a password, identifying code,

6

> personal identification number, or other confidential information about a
> computer system or network that is intended to or does control access to
> the computer system or network; (5) Accesses a computer, a computer
> system, or a computer network, and intentionally examines information
> about another person; (6) Receives, retains, uses, or discloses any data
> he knows or believes was in violation of this subsection.

Mo. Rev. Stat. § 569.095.1 (2016); *see also W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012). The Court finds genuine issues of material fact exist with regard to Plaintiff's MCTA claims against Downey, Higdon, Sprint Lumber, and Laderoute. Therefore, Defendants' summary judgment motion on these particular claims is denied. However, similar to the CFAA claims, Plaintiff admitted Meng and Reynolds did not tamper with Plaintiff's computers, and therefore, Defendants' summary judgment motion on Plaintiff's MCTA claims against Meng and Reynolds is granted.

### (b) Punitive Damages under the MCTA

Defendants seek summary judgment on Plaintiff's claim for punitive damages under the MCTA. Plaintiff concedes the MCTA does not provide for punitive damages, but argues punitive damages are available because Defendants committed intentional torts. The MCTA allows for recovery of "compensatory damages, including any expenditures reasonably and necessarily incurred by the owner or lessee to verify the computer system…or data was not altered, damaged, or deleted by the access," and reasonable attorneys' fees. Mo. Rev. Stat. § 537.525(1)-(2). The statute does not allow for recovery for punitive damages. Plaintiff fails to cite any case finding otherwise. Defendants' summary judgment motion on Plaintiff's request for punitive damages under the MCTA is granted.

### (3) Missouri Uniform Trade Secrets Act (Count IV)

For its Missouri Uniform Trade Secrets Act ("MUTSA") claims, Plaintiff alleges Defendants disclosed and used Plaintiff's trade secrets without consent. Defendants argue the information and data at issue does not rise to the level of trade secrets.

To demonstrate a misappropriation of trade secrets, one must show: "(1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief." *Cent. Tr. & Inv. Co. v. Signalpoint Asset*

*Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014).[4]  A "trade secret" includes but is not limited to "technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that":

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453(4).  Several factors are considered when determining whether information is a trade secret:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 611 (Mo. banc 2006).  The party claiming information is a trade secret has the burden of proof.  *Id.*

In its Second Amended Complaint, Plaintiff alleges its trade secrets include "information concerning [Plaintiff's] business operations, logistics, compensation structure, business structure, business analyses, and customer contacts."  Doc. #109, at 20.  In response to Defendants' summary judgment motion, Plaintiff maintains its trade secrets are:  (1) its compilation of top customers' data related to those customers; (2) its financial data, market share, inventory turnover, and compensation information; (3) its material lists; and (4) its internal operating procedures.  Doc. #291, at 86.

---

[4] A misappropriation occurs when "one acquires a trade secret through 'improper means,'…or when one disclosing a trade secret without consent…knew or had reason to know that the secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683 (8th Cir. 2002) (citation omitted).

**(a) Top customer data compilation**

The parties agree Plaintiff's "top customer report lists [Plaintiff's] top 25 or 50 customers and includes total retail volume, margin applied, and total profits for each customer."  The parties disagree about whether these reports are trade secrets.

"Customer lists are protectable as trade secrets only when they represent a selective accumulation of information based on past selling experience, or when considerable time and effort have gone into compiling it."  *Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766, 777 (Mo. Ct. App. 2009) (internal quotation and citation omitted).  To be protected, a customer list "must be more than a listing of firms or individuals which could be compiled from directories or other generally available sources."  *Id.* (citation omitted).  Based upon the record before it and viewing the facts in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist with regard to whether Plaintiff's top customer data compilations are trade secrets.  Defendants' motion for summary judgment is denied with regard to Plaintiff's claim that its top customer data compilations are trade secrets.

**(b) Financial data, market share, and inventory turnover**[5]

Plaintiff includes several types of information in this grouping of trade secrets.  Doc. #291, at 86.  It appears this grouping also includes operating expenses, profits, product offerings, product pricing, pricing policies, top selling products, turnover rate, market share, and margins.  *Id.* at 93-97.  For many of the alleged trade secrets, it is unclear as to what information is contained therein (e.g., pricing policies), and therefore, the Court cannot ascertain whether the information could be a trade secret.  For other alleged trade secrets (e.g., product pricing), it is unclear how the information contained therein is not readily ascertainable by proper means by others.  For most, if not all, of these alleged trade secrets, the following is unknown or disputed:  Plaintiff's measures to guard the information's secrecy, the extent to which information is known by Plaintiff's employees, the effort expended by Plaintiff in developing the information, and the ease or difficulty with which the information could be acquired or duplicated by others.

---

[5] Plaintiff also included compensation information in this grouping.  The Court addresses that information separately.

Based upon the record (or lack thereof) before it and viewing the facts in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist with regard to whether these types of information and data are trade secrets. Defendants' motion for summary judgment is denied with regard to Plaintiff's claim that its financial data, market share, and inventory turnover are trade secrets.

### (c) Employee compensation information

Plaintiff alleges compensation information is a trade secret, but Plaintiff failed to establish it is a trade secret. First, Plaintiff failed to establish employees' compensation information is not readily ascertainable by proper means. With an employee's permission, Plaintiff would share this information with others. Doc. #265-47, at 9. Second, it is undisputed the compensation information shared with Laderoute is generally known in the industry, and is consistent with compensation paid in the industry for employees in similar roles. Doc. #265, at 25; Doc. #291, at 35. Third, Plaintiff's employees were not prohibited from sharing their compensation information. If Sprint Lumber contacted an employee, he could provide his compensation information. Lastly, Plaintiff set forth no case interpreting Missouri law finding compensation information is a trade secret.[6] For these reasons, Plaintiff failed to establish compensation information is a trade secret. Defendants' motion for summary judgment with regard to Plaintiff's claim that compensation information is a trade secret is granted.[7]

---

[6] Plaintiff cited to a case where this Court granted a preliminary injunction, and listed compensation as one of the broad categories of trade secrets pled by the plaintiffs. *H&R Block E. Tax Servs., Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1074 (W.D. Mo. 2002). The Court did not specifically find compensation was a trade secret.

[7] Plaintiff contends Downey's sharing of other employees' compensation information with Sprint Lumber constitutes a misappropriation of a trade secret. Doc. #291, at 94. This argument disregards Plaintiff's admission that the compensation information was generally known in the industry, employees were not prohibited from sharing compensation information, and the information could be obtained by others through proper means. While Downey shared information considered confidential by Plaintiff, he did not share trade secrets when he shared employees' compensation information.

### (d) Material lists

Plaintiff alleges the material lists for customers' jobs, which were revised by employees to include actual materials and quantities used, are trade secrets. While material lists appear to be compilations of data and provide an independent economic value to Plaintiff, it is unclear what efforts Plaintiff took to maintain their secrecy. Also, while some information in the material lists is provided by a customer, it is unknown as to whether the material list, including the revisions made by Plaintiff's employees, is or may be provided to a customer. Based upon the record before it and viewing the facts in the light most favorable to Plaintiff, the Court finds genuine issues of disputed facts exist with regard to whether Plaintiff's material lists are trade secrets. Defendants' motion for summary judgment is denied in this regard.

### (e) Internal operating procedures

Plaintiff maintains its internal operating procedures, including its receiving procedures and how it handles orders in the yard, are trade secrets. Defendants argue these procedures are not trade secrets because they are derived from common sense and experience in the industry. While the Court remains skeptical these procedures are trade secrets, genuine issues of material fact exist with regard to this claim. Thus, the Court denies Defendants' motion for summary judgment on Plaintiff's claim that its internal operating procedures are trade secrets.

### (4) MUTSA Preemption

Before considering Defendants' summary judgment motion on Counts V, VI, and VIII, the Court must first address Defendants' argument that Plaintiff's breach of duty of loyalty, tortious interference, and civil conspiracy claims are preempted by the MUTSA. The MUTSA "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463(1). The MUTSA "shall not affect…[o]ther civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 417.463(2)-(3). Common law claims are preempted by the MUTSA "if they are based on facts related to the misappropriation of trade secrets claim." *EnviroPAK Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754,

2015 WL 221807, at *5 (E.D. Mo. Jan. 23, 2015) (citation omitted).  The MUTSA "will not preempt a claim if the information at issue does not rise to the level of statutorily-defined trade secret."  *Id.* (citing *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010)).

While there is overlap between its MUTSA claims and tort claims, Plaintiff's tort claims are more expansive.  Specifically, Plaintiff's tort claims are based, in part, on Defendants' alleged misuse, misappropriation, and/or destruction of confidential information that does not rise to the level of statutorily-defined trade secret.  Such claims are not preempted by the MUTSA.  Therefore, Defendants' motion for summary judgment in this regard is denied.

## (5) Breach of Duty of Loyalty (Count V)[8]

Plaintiff alleges the former employees "owed a duty of loyalty to Porters, including a duty to maintain confidentiality," and Sprint Lumber and Laderoute owed a duty not to induce the former employees to breach their duty of loyalty.  Doc. #109, at 21-22.  Plaintiff maintains its former employees gave confidential information to Sprint Lumber, and solicited Plaintiff's customers on behalf of Sprint Lumber.  *Id.*  Defendants argue they are entitled to summary judgment on this claim because there is no duty of confidentiality, the information was not confidential, the former employees were free to utilize information they naturally acquired in their work at Sprint Lumber, and there is no evidence the alleged sharing of Plaintiff's information caused damage to Plaintiff.  Doc. #265, at 56.  When viewing the evidence in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist with regard to this claim.  Thus, Defendants' motion for summary judgment on this claim is denied.[9]

---

[8] Although the Second Amended Complaint did not set forth which state's law applied to this claim, the parties applied Missouri law.  With regard to this claim and other claims and counterclaims where the parties applied Missouri law when the operative pleading did not specify the appropriate state's law, the Court will do the same.

[9] With regard to Count V, it is unclear if Plaintiff asserts breach of duty of loyalty and breach of duty of confidentiality, or if breach of duty of confidentiality is a basis for a breach of duty of loyalty claim.  Other than cases involving attorneys' duties, the Court has been unable to find a case interpreting Missouri law where separate duties of loyalty and confidentiality were alleged and permitted.

### (6) Tortious Interference with Business Expectancy (Count VI)

Plaintiff contends Defendants tortiously interfered with its business expectancy in continued relationships with customers. Doc. #109, at 23. Tortious interference with business expectancy requires proof of (1) a valid business expectancy, (2) the defendant's knowledge of the relationship, (3) a breach induced or caused by the defendant's intentional interference, (4) absence of justification, and (5) damages. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996) (citation omitted). Defendants move for summary judgment on this claim, arguing Plaintiff cannot establish causation, absence of justification, and damages. Viewing the evidence in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist with regard to this claim. Defendants' motion for summary judgment on this claim is denied.

### (7) Trespass (Count VII)

Defendants argue they are entitled to summary judgment on Plaintiff's trespass claim, which alleges Downey, on behalf of Sprint Lumber and Laderoute, trespassed when he accessed the commercial sales office on May 7, 2016. Doc. #109, at 24. Viewing the evidence in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist with regard to this claim. The Court denies Defendants' motion for summary judgment on Plaintiff's trespass claim against Downey. The Court grants Defendants' motion for summary judgment on Plaintiff's trespass claim against Meng, Reynolds, Higdon, Sprint Lumber, and Laderoute because Plaintiff failed to establish a trespass claim against these Defendants. But, as set forth below, Sprint Lumber and Laderoute could be held liable for Downey's trespass pursuant to Plaintiff's civil conspiracy claim.

### (8) Civil Conspiracy (Count VIII)

Plaintiff alleges Defendants had a meeting of the minds on an unlawful objective, committed acts in furtherance of the conspiracy, and damaged Plaintiff. Doc. #109, at 25-26. Defendants' sole argument for summary judgment on this claim is the alleged underlying acts fail, and therefore, the civil conspiracy claim fails.

Contrary to Defendants' argument, the underlying torts for Plaintiff's civil conspiracy claim do not fail. Also, the Court finds genuine issues of material fact exist with regard to this claim. The Court denies Defendants' summary judgment motion on Plaintiff's civil conspiracy claim.

### (9) Lost Customers and Sales

Defendants argue they are entitled to summary judgment on Plaintiff's claims for lost customers and lost sales because Defendants' actions did not cause damages, and Plaintiff failed to establish causation and damages. As set forth above, the Court determined genuine issues of material fact exist with regard to most of Plaintiff's claims. Included in those determinations are disputed facts pertaining to causation and damages. Thus, the Court denies Defendants' motion for summary judgment on Plaintiff's claim for lost customers and sales.

### B. Plaintiff's Motion for Summary Judgment
### (1) Violation of 18 U.S.C. § 2701

Plaintiff provided an email account to Downey for business purposes while he was employed. During his employment with Plaintiff, Downey used multiple computers owned by Plaintiff to access a personal email account. The personal email account was created by Downey's wife, but he was permitted to access and use it. Downey saved the personal email account's password on at least one of Plaintiff's computers. Both Downey's email accounts were hosted by Gmail. To access either account, one must open an internet browser, and navigate to the Gmail login page.

In late April 2016 and possibly in May 2016, Plaintiff, through Kent Porter and Alex Porter, opened the personal email account, and viewed emails that had been opened previously. Plaintiff, which was not a party to or an intended recipient of the emails, viewed emails in the personal email account pertaining to Plaintiff's business. Plaintiff also printed emails from the personal email account that pertained to former employees communicating with each other or Sprint Lumber.

Downey alleges Plaintiff violated the Stored Wire and Electronic Communications and Transactional Act ("SCA"), 18 U.S.C. § 2701, when it intentionally, knowingly,

willfully, and without authorization accessed his electronic communications from the personal email account while those communications were in electronic storage. Doc. #122, at 23. To establish a claim under the SCA, a plaintiff must show someone (1) intentionally accessed without authorization a facility through which an electronic communication service is provided, or (2) intentionally exceeds authorization to access a facility, and obtains, alters, or prevents authorized access to an electronic communication that is in electronic storage. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 838 (8th Cir. 2015) (quoting 18 U.S.C. § 2701). The parties disagree on whether Downey's emails were in electronic storage. Relevant here, "electronic storage" is defined as "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).[10]

In a matter involving an employer accessing emails from an employee's personal email account, the Eighth Circuit determined a sent email in a Gmail account was not in electronic storage within the meaning of the SCA. *Anzaldua*, 793 F.3d at 837-38. The Eighth Circuit examined the split in authority as to whether emails are stored for backup purposes, but stated it was not deciding whether to follow one line of cases or the other. *Id.* at 840-42 (citations omitted) (referencing several cases, including cases upon which Downey relies).[11] Nonetheless, the Eighth Circuit held that, even if it had adopted the more lenient standard, it would "still conclude that the sent…email was not stored on the Gmail server for backup protection purposes." *Id.* (noting the fact that a copy of an email may serve as a backup does not mean it is being stored for that purpose).

*Anzaldua* is instructive here. An email simply stored on a Gmail server is not stored for backup purposes. *Id.* Further, Downey has not established the opened emails in his inbox were stored for backup purposes. Thus, Plaintiff is granted summary judgment on this counterclaim.

---

[10] The other definition for "electronic storage" is inapplicable because Downey, by failing to respond to argument regarding the other definition, tacitly conceded his claim based upon the other definition. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009).

[11] One of the three cases cited by Plaintiff – *Lazette v. Kulmatycki* – actually supports Plaintiff's argument. 949 F. Supp. 2d 748, 758 (N.D. Ohio 2013) (stating opened emails were not in electronic storage).

## (2) Violation of 18 U.S.C. § 2511

Downey alleges Plaintiff violated 18 U.S.C. § 2511, the Wiretap Act or the Electronic Communications Privacy Act ("ECPA"), when it intentionally intercepted, disclosed, and used his email communications without consent. Doc. #122, at 23. Plaintiff argues it is entitled to summary judgment because interception did not occur during transmission of the email.

The ECPA allows a person whose electronic communication is intercepted to bring a civil action. 18 U.S.C. §§ 2511(1)(a), 2520(a). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The parties dispute whether interception must occur while the email is transmitted. The Eighth Circuit has not decided this particular issue, but most courts have determined interception must occur during transmission. *See*, *e.g.*, *Luis v. Zang*, 833 F.3d 619, 628-29 (6th Cir. 2016) (holding interception occurs when an electronic communication is acquired contemporaneously with the transmission); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 (3d Cir. 2003) (citation omitted) (finding "there can be no 'intercept' of an email in storage," because an "email in storage is by definition not an 'electronic communication.'"); *United States v. Steiger*, 318 F.3d 1039, 1049-50 (11th Cir. 2003) (finding interception must occur during transmission); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (same).

The Court agrees with the findings of the majority of the courts. Plaintiff's conduct in this matter, which consisted of viewing emails that were already received and opened, is not the type of conduct prohibited by the ECPA. Further, Downey failed to establish Plaintiff intercepted these emails during transmission. Thus, Plaintiff's summary judgment motion on this counterclaim is granted.

## (3) Invasion of Privacy

Downey alleges he had a reasonable expectation of privacy in his emails, and Plaintiff intentionally intruded upon the solitude and seclusion of Downey's private affairs when it accessed his emails. Doc. #122, at 25. Plaintiff argues it is entitled to

summary judgment because Downey did not suffer substantial damages, and Plaintiff's actions were not highly offensive to a reasonable person.

To establish a claim for invasion of privacy based upon unreasonable intrusion upon seclusion, a plaintiff must establish "(1) the existence of a secret and private subject matter; (2) a right possessed by plaintiff to keep that subject matter private; and (3) the obtaining of information about the subject matter by defendant through some method objectionable to the reasonable" person. *Corcoran v. Sw. Bell Tel. Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1978) (citation omitted); *see Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers, Local 1, AFL-CIO*, 427 F.3d 511, 524 (8th Cir. 2005) (citing *Corcoran*, 572 S.W.2d at 215). "Whether a defendant obtained information through a method objectionable to the reasonable person is 'ordinarily a question for the jury.'" *Ruzicka Elec.*, 427 F.3d at 524 (quoting *Sofka v. Thal*, 662 S.W.2d 502, 511 (Mo. banc 1983)). The Court finds a genuine issue of material fact exists with regard to this claim, and denies Plaintiff's summary judgment motion on this counterclaim.[12]

### (4) Trespass to Chattels

Downey contends he "held a possessory interest in his email communications the intrinsic value of which was based in part on the private and confidential nature of the communications," and Plaintiff "intermeddled" with his possessory interest. Doc. #122, at 25. Downey also alleges Plaintiff used information in his emails for personal and professional gain, which impaired the condition, quality, and value of his property. *Id.* at 25-26. Plaintiff argues it is entitled to summary judgment on this counterclaim

---

[12] With regard to this claim, the Court notes two outstanding issues. First, Plaintiff argues Downey must prove "substantial" damages, but the cases cited by Plaintiff do not support this proposition. *Elgin v. St. Louis Coca-Cola Bottling Co.*, No. 05CV970, 2005 WL 3050633, at *4 (addressing substantial intrusion, not substantial damages); *Sofka*, 662 S.W.2d at 511 (referring to "substantial damages" in the context of whether the plaintiff's seclusion suffered substantial interference). The Court was unable to locate a case requiring a plaintiff demonstrate "substantial damages," instead of actual damages, for an invasion of privacy claim. Second, Plaintiff appears to argue Downey must present expert medical testimony to recover for emotional distress resulting from the alleged intrusion, but the case suggests otherwise. *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 n.4 (Mo. banc 2006).

because it is based upon an intangible privacy right, Plaintiff did not dispossess Downey of anything, and Plaintiff did not cause actual damage to the property.

"A trespass to chattel may be committed by intentionally intermeddling with a chattel in the possession of another…." *Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 797 (Mo. Ct. App. 1998). "[T]here must be a disturbance of plaintiff's possession, which…may be done by an actual taking, a physical seizing..., remov[al] from their owner, or by exercising a control or authority over them inconsistent with their owner's possession." *Pope v. Cordell*, 47 Mo. 251, 252 (1871) (citations omitted). The required intent "is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." *Foremost Ins. Co.*, 985 S.W.2d at 797.

The Court must first decide whether an email communication is chattel. Chattel is defined as "[m]ovable or transferable property; esp. personal property," and "[p]ersonal chattel is defined as a 'tangible good or an intangible right.'" *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 600 (Mo. Ct. App. 2000) (quoting *Chattel*, Black's Law Dictionary (7th ed. 1999)) (analyzing a claim of malicious trespass). Although not addressing a trespass to chattel claim, the Missouri Supreme Court stated "[p]ersonal property can be either tangible or intangible." *Norris v. Norris*, 731 S.W.2d 844, 845 (Mo. banc 1987) (citations omitted) (construing a will). Neither party cites a case deciding whether email communications are chattel in Missouri. This is not surprising given the sparse Missouri case law on trespass to chattel. *See Tubbs v. Delk*, 932 S.W.2d 454, 456 (Mo. Ct. App. 1996) (noting the only Missouri case (as of 1996) where a trespass to chattel claim was tried occurred sometime before 1871) (citing *Pope*, 47 Mo. 251).

Trespass to chattel is an archaic common law claim. The Tenth Circuit recently discussed this claim when faced with deciding whether the opening and examining of emails constituted a Fourth Amendment. *United States v. Ackerman*, 831 F.3d 1291, 1308-09 (10th Cir. 2016). The Tenth Circuit noted "the warrantless opening and examination of (presumptively) private [email] correspondence"…"seems pretty clear to qualify as exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment." *Id.* at 1308 (citations omitted). Of course,

18

as the Tenth Circuit stated, the "the framers were concerned with the protection of physical rather than virtual correspondence…. But a more obvious analogy from principle to new technology is hard to imagine…" *Id.* at 1309 (citations omitted).

As referenced in *Ackerman*, many courts have applied trespass to chattels to actions taken in cyberspace. *Id.* at 1308 (noting courts have applied the "ancient trespass to chattels doctrine to electronic, not just written, communications.") (citations omitted). But there is no consensus among the courts. Some courts found personal intangible property is chattel.[13] Other courts concluded trespass to chattel, including a claim related to intangible property, must have a connection to tangible property.[14]

While the parties disagree on whether email communications are chattel, the parties failed to address whether Downey's email communications were connected to something tangible. Fortunately, several district courts recently shed light on this issue as it relates to Google's network, the same network utilized by Downey. *See In re Search Warrant No. 16-960-M-1 to Google*, No. 16-960, 2017 WL 3535037, at *1 (E.D. Pa. Aug. 17, 2017); *In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc.*, No. 16-757, 2017 WL 3445634, at *2 (D. D.C. July 31, 2017); *In re Search Warrant to Google, Inc.*, No. 16-4116, 2017 WL 2985391, at *2 (D. N.J. July 10, 2017). These cases establish Google stores its customers' e-mail content on servers located in the United States and abroad. On its website, Google states that "[r]ather than storing each user's data on a single machine or set of machines, we distribute all data…across many computers in different locations." Google Data Centers, www.google.com/about/datacenters/inside/data-

---

[13] *See, e.g.*, *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011) (finding a website is chattel); *Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*, 720 F. Supp. 2d 904, 925 (S.D. Ohio 2010) (recognizing a claim for trespass to chattels through use of the internet); *Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451-52 (E.D. Va. 1998) (stating transmission of unsolicited bulk emails can constitute trespass to chattels).

[14] *See, e.g.*, *Fidlar Techs. V. LPS Real Estate Data Sols., Inc.*, No. 13CV4021, 2013 WL 5973938, at *10 (C.D. Ill. Nov. 8, 2013) (finding alleged theft of data on servers did not constitute trespass to chattels because the data was not a tangible property and was not owned by the plaintiff); *Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 268-69 (N.D. Ohio 2007) (finding the plaintiff failed to establish a domain name was chattel because it was not connected to a physical object).

security/index.html (last visited Sept. 21, 2017).  The Court takes judicial notice that Google stores its customers' email communications on servers.  Fed. R. Evid. 201(b)(2); *Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1042 n.4 (E.D. Mo. 2004) (citation omitted) (taking judicial notice of contents of a company's website).  Accordingly, Downey's email communications are connected to something tangible – i.e., Google's servers.

This Court can only speculate as to what Missouri courts would do in this particular instance.  While the Missouri Supreme Court has held personal property can be tangible or intangible, it is unknown if it would extend a claim for trespass to chattel to email communications.  If this case pertained to tangible letters written by Downey, he could bring a trespass to chattel claim.  If Downey printed the subject email communications, this Court believes he could bring a trespass to chattel claim.

The Court is persuaded by the Tenth Circuit's statements in *Ackerman* and the other courts that have determined "chattel" extends to intangible property when the intangible property is connected to a tangible object.  The Court concludes Missouri courts would find a trespass to chattel claim includes an email communication when the email communication is connected to a tangible object, such as a server.[15]  As such, Downey may maintain such an action against Plaintiff, and Plaintiff's summary judgment motion on this counterclaim is denied.  Plaintiff's summary judgment motion on this counterclaim is also denied with regard to its remaining arguments because the Court finds genuine issues of material fact exist with regard to this claim.

## IV.    CONCLUSION

As set forth above, the Court issues its rulings on the pending summary judgment motions as follows:

(1)    Defendants' motion for summary judgment on Count I (CFAA) and III (MCTA) is granted with regard to Plaintiff's claims against Defendants Meng and

---

[15] Even if it did not take judicial notice of Google's servers storing customers' email data, the Court, in light of the dicta in *Ackerman* and the cases finding intangible property can form the basis of a trespass to chattels claim (regardless of whether the intangible property was connected to something tangible), would find Downey could bring a counterclaim for trespass to chattels as it relates to his email communications.

Reynolds, but is denied with regard to Plaintiff's CFAA and MCTA claims against Defendants Downey, Higdon, Laderoute and Sprint Lumber.

(2)     Defendants' motion for summary judgment on Count IV (MUTSA) is granted with regard to Plaintiff's MUTSA claims based upon employee compensation but is denied in all other respects.

(3)     Defendants' motion for summary judgment on Count V (breach of duty of loyalty), Count VI (tortious interference with business expectancy), and Count VIII (civil conspiracy) is denied.

(4)     Defendants' motion for summary judgment on Count VII (trespass) is granted with regard to Plaintiff's claim against Defendants Reynolds, Higdon, Meng, Sprint Lumber, and Laderoute, but is denied with regard to Plaintiff's trespass claim against Defendant Downey.

(5)     Defendants' motion for summary judgment on Plaintiff's claim for recovery of lost sales and lost customers is denied.

(6)     Plaintiff's motion for summary judgment on Downey's counterclaims for violation of 18 U.S.C. § 2701 and violation of 18 U.S.C. § 2511 is granted.

(7)     Plaintiff's motion for summary judgment on Downey's counterclaims for invasion of privacy and trespass to chattels is denied.


IT IS SO ORDERED.


                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 2, 2017                   UNITED STATES DISTRICT COURT